**FLORIDA POWER & LIGHT COM-PANY, a Florida corporation, Plaintiff,**

v.

**HERCULES CONCRETE PILE CO., a** New Jersey corporation, Defendant.

**No. 64–122–Civ.**

United States District Court
S. D. Florida,
Miami Division.

Nov. 1, 1967.

Scott, McCarthy, Steel, Hector & Davis, George Wright, Miami, Fla., for plaintiff.

Dixon, DeJarnette, Bradford, Williams, McKay & Kimbrell, Miami, Fla., for defendant.

## JUDGMENT ON THE PLEADINGS

CABOT, District Judge.

This cause is before this Court on the motion of the defendant for summary judgment or judgment on the pleadings. The cause, after having been before the Court for over three years was finally ready for trial the week of September 12, 1967. However, a few days prior to the date of trial it was again removed from the trial calendar after attorney for the plaintiff discovered a recent case which he felt was quite persuasive against his position. He, thereupon, brought it to the attention of opposing counsel and the Court with the suggestion that its impact on this case be determined prior to what appeared to be a long and costly jury trial. Thereupon, defendant filed a motion for summary judgment in order to present the questions in light of the recent case of Ocean Drilling and Exploration Company v. Berry Brothers Oilfield Service, Inc., 377 F.2d 511 (5th Cir. 1967). The Court is grateful to plaintiff's counsel and wishes to commend his display of candor and fairness with the Court.

The genesis of this case was over eleven years ago, on or about June 7, 1956. At that time plaintiff, Florida Power & Light Company (FPL), contracted with Sunshine Contractors, Inc., for the construction of a culvert in Broward County, Florida. A portion of the construction took place on State Road 84 near the south fork of New River. Subsequently, Sunshine made oral arrangements with the defendant, Hercules Concrete Pile Co. (Hercules), whereby Hercules furnished a crane to be used to drive pilings in connection with the construction, plus a crew, one of whom was John T. Ahearn. On or about July 3, 1956, the crane was delivered to the job site and while being placed into position to drive the pilings, the boom came in contact with an over-head power line owned by FPL, which contained over 7,000 volts at the point of contact. As a result John T. Ahearn was electrocuted.

Suit for wrongful death was brought by Rita Ahearn, widow of John T. Ahearn, against FPL. After the case had literally bounced throughout the judicial system of Florida, (See Ahearn v. Florida Power & Light Co., 113 So.2d 751 (Fla.App.1959); Florida Power & Light Co., v. Ahearn, 118 So.2d 21 (Fla. 1960); Ahearn v. Florida Power & Light Co., 129 So.2d 457 (Fla.App. 1961)), FPL settled with Rita Ahearn.

Thereupon, suit was instituted by FPL for indemnity from Hercules in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida. Hercules removed the case to this Court, jurisdiction being based on 28 U.S.C. § 1332. FPL amended its complaint so that the demand for indemnity before this Court was stated in two counts which will be discussed separately. Hercules's defense, inter alia, is that by virtue of the exclusive liability section of the Florida Workmen's Compensation Act, Section 440.11, Florida Statutes, F.S.A., FPL is precluded from regaining indemnity against Hercules. It is conceded by FPL that Hercules has secured the benefits of Workmen's Compensation under Section 440.10, Florida Statutes, F.S.A., to Rita Ahearn.

Section 440.11, Florida Statutes, F.S. A., reads in pertinent part as follows:

> The liability of an employer prescribed in § 440.10 shall be exclusive and in place of all of the liability of such employer to * * * *anyone otherwise entitled to recover damages from such employer at law* * * * *on account of such injury or death* * * *. [Emphasis supplied.]

The emphasized portion of the statute clearly indicates that one who desires to recover damages from an employer, such as indemnity, must show an independent duty owed by the employer to the third party and a breach of that duty.

■ An examination by counsel and the Court fails to disclose any decisions by the appellate courts of the State of Florida indicating how they would hold as to the point raised here. Inasmuch as jurisdiction of this Court is based on diversity of citizenship, it is, therefore, the duty of this Court to determine what that holding would be in the event that this question is in the future posed to the state courts.

## COUNT I

■ In Count I plaintiff seeks to recover on the so-called active-passive tortfeasor theory of indemnity. Under this principle one who is considered a "passive" tortfeasor may recover indemnity from a so-called "active" tortfeasor, the measure of damages being the recovery which the injured party received from the passive tortfeasor. There is no question that this principle of law is recognized in Florida. See Winn-Dixie Stores, Inc. v. Fellows, 153 So.2d 45 (Fla.App.1963). In the *Winn-Dixie* case and in subsequent cases, the Florida courts have relied on the North Carolina decision of Hunsucker v. High Point Bending and Chair Co., 237 N.C. 559, 75 S.E.2d 768 (1953), for a statement of the theory upon which this principle is bottomed. A simple statement of the rationale is that:

> * * * the actively negligent tortfeasor and the passively negligent tort-feasor are both liable in damages to the injured third person for the joint wrong. As between themselves, however, the primary liability for the damages rests upon the actively negligent tort-feasor because of the difference in the kinds of negligence of the two tort feasors. When the passively negligent tort-feasor is forced to pay the damages to the injured third person, he discharges the obligation for which the actively negligent tort-feasor is primarily liable, and for this reason is entitled to indemnity from him. [Citing cases] Hunsucker v. High Point Bending and Chair Co., supra at page 771.

■ It is clear from the statement just cited that in a case such as this, where the alleged actively negligent tortfeasor is an employer who has paid Workmen's Compensation, this active-passive theory affords no remedy to the alleged passively negligent tortfeasor who has been required to respond to the injured employee. The reason for this is that the theory is grounded upon the discharge of an obligation owed by the employer, charged as an actively negligent tortfeasor, to his injured employee. However, when the employer has paid Workmen's Compensation, the exclusiveness of that remedy means that there is no further obligation for the passive tortfeasor to discharge. As a result, the *Hunsucker* case, which has been favorably cited by the Florida courts, held that the Workmen's Compensation Act abrogated the right of a passively negligent tortfeasor to demand indemnity from an actively negligent employer. This Court is of the opinion that the Florida courts would so hold and that therefore, assuming plaintiff could prove the allegations of Count I of its complaint, it would still be precluded from recovery. Therefore, judgment on the pleadings should be granted as to Count I of the amended complaint.

## COUNT II

■ Count II is based on an implied indemnity agreement. The basis of Count II of the complaint is that Hercules impliedly warranted that it would discharge its contractual duties in a safe and workmanlike manner and that it further impliedly agreed to indemnify. As plaintiff's memorandum submitted in opposition to the motion being considered shows, this implied promise to indemnify is based on the *Ryan* doctrine from Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). That case involved a shipowner who had contracted with a stevedoring company for services aboard ship. While engaging in the loading of the ship, an employee of the stevedoring company was injured due to the negligence of

another employee. The injured employee sued and recovered from the shipowner for the unseaworthiness of the vessel, and the shipowner impleaded the stevedore-employer. The employer, who had paid Workmen's Compensation under the Longshoremen's Act, 33 U.S.C. § 901 et seq., set up as a defense the exclusive liability provision of Section 5 of the Act, 33 U.S.C. § 905. The Supreme Court, however, held that the shipowner was entitled to indemnity based on the implied agreement to indemnify, which apparently arises out of the stevedore's implied warranty that it will do its work in a safe and workmanlike manner. The Court pointed out that the shipowner was recovering on a wholly independent duty owed him by the stevedoring company and not on account of the injuries to the employee.

Hercules here first asserts that FPL may not rely on *Ryan* inasmuch as its contract was with Sunshine and not with FPL. However, subsequent decisions of the Supreme Court clearly indicate that direct contractual privity is not a prerequisite for reliance on *Ryan*. For example, in Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959), the stevedoring company had contracted with the bare boat charterer and yet recovery under *Ryan* was allowed to the shipowner. As the Court pointed out there, the work done by the stevedoring company was plainly for the benefit of the vessel and that fact was enough to bring the vessel into the "zone of modern law that recognizes rights in third-party beneficiaries." 358 U.S. at page 429, 79 S.Ct. at page 448. See also Waterman Steamship Corp. v. Dugan and McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed. 2d 169 (1960). Here, the work to be done by Hercules was clearly for the benefit of FPL.

The defendant submits that based on the *Ocean Drilling* case, the *Ryan* doctrine is not applicable to the facts of the case at bar. It is submitted that the *Ryan* doctrine should not extend past the shipowner-stevedore situation. However, this Court need not delineate the scope of *Ryan* inasmuch as, assuming arguendo that it does extend to non-shipowner-stevedore contracts, the plaintiff would still not be able to recover.

The Supreme Court indicated the underlying basis for the Ryan doctrine when it said:

Where the shipowner is liable to the employees of the stevedore company * * * for failing to supply a vessel and equipment free of defects, *regardless of negligence*, we do not think it unfair or unwise to require the stevedore to indemnify the shipowner for damages sustained as a result of injury-producing defective equipment supplied by a stevedore in furtherance of its contractual obligations. Italia Societa per Azioni di Navigazione v. Oregon Stevedoring Co., Inc., 376 U.S. 315, 324, 84 S.Ct. 748, 754, 11 L.Ed.2d 732 (1964).

It therefore appears that if the *Ryan* doctrine is extended, it would be extended only in favor of an indemnitee who has been held liable without fault, based on some concept of strict liability such as unseaworthiness. However, here as in the *Ocean Drilling* case, the plaintiff's liability to Rita Ahearn could not have been based on liability without fault. On the contrary, as plaintiff points out, its liability was based on its own negligence, even though it chooses to characterize that negligence as "passive." This being so, what in essence the plaintiff is seeking is indemnity for its own negligence. The Florida courts have clearly held that the intent to indemnify one against his own negligence may not be inferred but rather must be in "clear and unequivocal terms." This was painfully brought to the plaintiff's attention when it first sought indemnity from Sunshine based on an expressed indemnity contract, from which the Florida courts refused to infer the intent to indemnify FPL against its own negligence. Florida Power &

Light Co. v. Elmore, 189 So.2d 522 (Fla. App.1966).

Therefore, assuming that plaintiff would be able to prove all the allegations contained in Count II of its complaint, the Court is of the opinion that it still would not be entitled to recover and, therefore, judgment on the pleadings should be rendered in favor of Hercules. Accordingly, it is

Ordered and adjudged that the motion for judgment on the pleadings of defendant, Hercules Concrete Pile Co., is hereby granted and the plaintiff shall take nothing by its complaint and the defendant shall go hence without day.